**HANDY & HARMAN REFINING GROUP, INC.**
**INVENTORIES ( fine troy ozs)**
**January 31, 2000**

| | GOLD | SILVER | PLATINUM | PALLADIUM | DOLLARS |
|---|---|---|---|---|---|
| **Inventory at Plant:** | | | | | |
| Attleboro | 315,844.63 | 5,438,568.72 | 4,098.63 | 6,974.36 | 123,707,610 |
| South Windsor | 37,107.81 | 793,919.45 | 874.22 | 6,451.07 | 18,275,472 |
| Phoenix | 9,578.92 | 126,368.12 | 259.74 | 2,076.43 | 4,517,022 |
| Villa Park | 6,085.36 | - | - | 86.04 | 1,765,626 |
| Singapore | 1,227.89 | 2.03 | - | - | 347,872 |
| | 369,844.61 | 6,358,858.32 | 5,232.59 | 15,587.90 | 148,613,603 |
| **Inventory at Smelter.** | | | | | |
| Degussa | 5,918.00 | 63,725.95 | 975.16 | (742.18) | 2,137,80 |
| Degussa - South Plainfield | (43.25) | (40,999.34) | (184.35) | 230.84 | (209,07 |
| Itochu | 6,472.14 | 111,678.39 | 158.23 | 1,710.55 | 3,331,68 |
| JM West Deptford | 139.12 | 1,944.24 | 358.27 | 1,915.12 | 1,153,57 |
| MHO (U.M.) | 14,240.22 | 441,848.03 | 258.82 | 1,188.06 | 7,079,16 |
| JM U.K. | - | - | - | - | |
| Other | 2,764.02 | 7,865.56 | 6.29 | 497.71 | 1,068,736 |
| | 29,490.24 | 586,062.83 | 1,572.42 | 4,800.10 | 14,562.31 |
| **Inventory at Depository:** | | | | | |
| Morgan Guaranty LTD | | 156,853.81 | | | 831,325 |
| Englehard | 2,818.96 | 312,153.78 | 34.41 | - | 2,470,057 |
| JM Valley Forge | 113.59 | 2,338.13 | 39.63 | 15.41 | 71,643 |
| Credit Suisse Zurich | | | | | - |
| Vets International | | | | | |
| Via Mat International | | | | | - |
| Brambles Salt Lake City | | | | | - |
| Scotiamocatta Depository Corporation | | | | | |
| | 2,932.55 | 471,345.72 | 74.03 | 15.41 | 3,373,026 |
| **Inventory in Transit (Courier)** | | | | | |
| Loomis | - | | | | |
| | | | | | |
| **Inventory in Transit (Ocean Cargo).** | | | | | |
| Credit Suisse Zurich | - | - | - | - | - |
| | | | | | |
| **Total Inventory** | 402,267.40 | 7,416,266.87 | 6,879.04 | 20,403.40 | 166,548,940 |
| Credit Suisse | (315,844.63) | (5,438,568.72) | - | - | (118,303,196) |
| Fleet | (63,200.00) | (500,000.00) | (3,556.09) | (16,696.16) | (30,395,766) |
| Customer Consignment | (19,508.79) | (1,445,554.77) | (3,298.05) | (3,654.83) | (16,589,756) |
| Total | (398,553.42) | (7,384,123.49) | (6,854.15) | (20,350.99) | (165,288,719) |
| reconciliations in progress | 3,713.98 | 32,143.38 | 24.89 | 52.42 | 1,260,220 |
| Price | $283.30 | $5.30 | $495.00 | $484.00 | |
| Dollar Value of inventory | $112,910,184 | $39,135,854 | $3,392,803 | $9,849,878 S | 165,288,719 |

In re HANDY & HARMAN REFINING GROUP, INC. and Attleboro Refining Co., Inc., Debtors.

Nos. 00–20845, 00–20846.

United States Bankruptcy Court, D. Connecticut.

July 13, 2001.

Eric A. Henzy, Reid & Riege, P.C., Hartford, CT, for debtor.

Jed Horwitt, Zeisler & Zeisler, P.C., Bridgeport, CT, for Official Committee of Unsecured Creditors.

Patricia Beary, Carol A. Felicetta, Office of the United States Trustee, New Haven, CT, Ann M. Nevins, Assistant United States Attorney, Office of the United States Attorney, Bridgeport, CT, for United States Mint.

Harold S. Novikoff, Douglas Mayer, Wachtel, Lipton, Rosen & Katz, New York City, for Credit Suisse First Boston International.

Gregory Nye, Denise Polivy, Bingham, Dana LLP, Hartford, CT, for Credit Suisse First Boston International.

Todd Feinsmith, Brown, Rudnick, Freed & Gesmer, P.C., Boston, MA, Brian C. Courtney, Brown, Rudnick, Freed & Gesmer, P.C., Hartford, CT, for Fleet National Bank and Fleet Precious Metals, Inc.

*RULING ON MOTION FOR FINDINGS OF FACT BASED ON INFERENCE THAT WITNESS ASSERTING FIFTH AMENDMENT PRIVILEGE WOULD HAVE TESTIFIED ADVERSE TO THE INTEREST OF THE DEBTOR*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

### I.

The present motion was filed by the United States Mint ("the Mint") in the context of the proceeding for estimation of the Mint's constructive trust claim against the bankruptcy estate of Handy and Harman Refining Group, Inc. ("the debtor"), the debtor in possession in a liquidating Chapter 11 bankruptcy case. The Mint seeks a court order to admit as evidence a series of questions and an inference that William Myles ("the witness"), a potential witness who will invoke his Fifth Amendment privilege and refuse to testify, would have answered such questions in the affirmative, adversely to the interests of the debtor. The debtor and the Official Committee of Unsecured Creditors ("the committee") object to the Mint's motion. Fleet National Bank and Fleet Precious Metals, Inc. and Credit Suisse First Boston International filed memoranda supporting the debtor's and committee's objection and further objecting to the Mint's motion insofar as any inferences the Mint seeks to have admitted could be deemed applicable against them in pending adversary proceedings.

### II.

The United States Department of Justice is conducting an ongoing criminal investigation into the activities of the debtor and its present and former employees. The parties to the present proceeding have stipulated that, as a result of such investigation, the witness, former comptroller of the debtor, will, if called upon to testify, assert his Fifth Amendment privilege against self-incrimination and refuse to answer any questions relating to the debtor or to the Mint. The Mint has attached to its motion a series of questions and "seeks an order from this Court finding that William Myles ... would have answered 'yes' to the questions ... and admitting such questions and answers into evidence." (Motion at 1.)

### III.

The Second Circuit has held that there is "no constitutional mandate" barring admission of a non-party's assertion of his Fifth Amendment privilege or prohibiting the trier of facts from drawing an adverse inferences therefrom, but ruled that, under the balancing test imposed by Fed.R.Evid. 403, the court must determine that "the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice." *Brink's, Inc. v. City of New York*, 717 F.2d 700, 710 (2d

Cir.1983). The Second Circuit later held that the "issue of the admissibility of a non-party's invocation of the Fifth Amendment privilege against self-incrimination in the course of civil litigation and the concomitant drawing of adverse inferences appropriately center on the circumstances of the case," and "suggest[ed] a number of non-exclusive factors which should guide the trial court in making these determinations," including (1) the nature of the relevant relationships, (2) the degree of control of the party over the non-party witness, (3) the compatibility of the interests of the party and the non-party witness, and (4) the role of the non-party witness in the litigation. *LiButti v. United States*, 107 F.3d 110, 123 (2d Cir.1997). Whether these or other circumstances unique to a particular case are considered by the trial court, the overarching concern is fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for truth. *Id.* at 124.

While no particular relationship governs, the nature of the relationship will invariably be the most significant circumstance. It should be examined, however, from the perspective of a non-party witness' loyalty to the plaintiff or defendant, as the case may be. The closer the bond, whether by reason of blood, friendship or business, the less likely the non-party witness would be to render testimony in order to damage the relationship.

*Id.* at 123.

 Because the present proceeding involves an insolvent debtor in a liquidating Chapter 11 bankruptcy, a determination

that the Mint is entitled to a constructive trust on the assets of the debtor would adversely affect not the insolvent debtor, but its creditors. The court construes the Mint's request, therefore, as seeking to admit an inference that the witness' answers would be adverse to the interests of the creditors, represented by the debtor in possession in its fiduciary capacity and by the committee. Accordingly, the relationship of the witness to the debtor's unsecured creditors is relevant. The Mint has provided no basis for a finding that there is presently any relationship between the witness and the debtor; nor that there is, or ever was, any relationship between the witness and the committee,[1] *see id.* (factor 1); nor is there any—financial, emotional or otherwise—over the witness. *Id.* (factor 2). The court also concludes that whether the witness is a key figure in the litigation remains unclear. (factor 4)

## IV.

The court concludes that insufficient grounds exist for the court to order an inference that, if not for his exercise of the privilege, the witness would have testified adversely to the interests of the debtor or the committee. Accordingly, the Mint's motion to admit into evidence its list of proposed questions and an order finding the answers to be in the affirmative is denied. It is

SO ORDERED.

---

1. Although the witness holds a severance pay claim against the estate, because the debtor holds sufficient assets, $20,000,000, to cover such claim, which is entitled to administrative priority, regardless of whether the court im-

poses the constructive trust of $13,000,000 requested by the Mint, the witness does not share the committee's interest in disallowing the Mint's constructive trust claim. *LiButti*, 107 F.3d at 123 (factor 3).